# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Jay Martin Barrash, M.D.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **Civ. Action No. 4:13-cv-1054** |
| | § | |
| **American Association of Neurological** | § | |
| **Surgeons, Inc.** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Before the Court is Defendant American Association of Neurological Surgeons, Inc.'s ("Defendant" or "AANS") Motion to Dismiss (Doc. No. 17). After considering the Motion, all responses and replies, and the applicable law, the Court concludes that Defendant's Motion to Dismiss must be **GRANTED.**

## I.    FACTS

This lawsuit arises out of the decision by AANS, an Illinois not-for-profit corporation, to censure Dr. Jay Martin Barrash ("Plaintiff" or "Barrash") for alleged violations of AANS' rules, while Barrash was testifying in a deposition as an expert for the plaintiff in a medical malpractice case. In November 2008, Dr. Masaki Oishi, a member of the AANS, instituted an internal grievance against Plaintiff, a fellow member, alleging that he violated the AANS's Rules for Neurosurgical Medical/Legal Expert Opinion Services (the "Rules on Expert Opinion Services"). (Doc. No. 1, Plaintiff's Complaint ¶¶ 26-27, 39, 42.) After Barrash participated in a hearing before the AANS Professional Conduct Committee and exercised two levels of appeal, the AANS found that Barrash had violated certain of its Rules on Expert Opinion Services and issued him a public censure in April 2011. (*Id.* at ¶¶ 54, 57, 60, 62, 72-74.)

The AANS is an Illinois scientific and educational non-profit association with over 8,000 members worldwide. (*Id.* at  ¶¶ 8-9.) Barrash was a member of the AANS from 1974 until he voluntarily resigned from the association in 2011. (*Id.* at ¶ 38.) AANS has adopted a Code of Ethics and Rules on Expert Opinion Services with which its members are required to comply. (*Id.* at ¶¶ 24,25,37,96.) The AANS Code of Ethics states, in relevant part:

- The neurological surgeon, as an expert witness, shall diligently and thoroughly prepare himself or herself with relevant facts so that he or she can, to the best of his or her ability, provide the court with accurate and documental opinions on the matters at hand.*(Id.* at ¶ 24; App. A-2 at (e)(2)).

The AANS Rules on Expert Opinion Services provide, in pertinent part:

- The neurosurgical expert witness shall be an impartial educator for attorneys, jurors and the court on the subject of neurosurgical practice. The neurosurgical expert witness shall review all pertinent available medical information about a particular patient prior to rendering an opinion about the appropriateness of medical or surgical management of that patient. (*Id.* at ¶ 25.)

Plaintiff was retained as an expert witness by the claimant in an underlying medical malpractice suit filed against Dr. Oishi, styled as *Glass v. Oishi, et al.*, No. 2006-2312-5, in the 414th Judicial District Court of McLennan County, Texas (the "Glass Malpractice Action"). (Pl.'s Compl. ¶¶ 26-27.) Plaintiff prepared a written expert report supporting the claims in the Glass Malpractice Action and later provided expert deposition testimony in that action. (*Id.* at ¶¶ 27, 30.) Dr. Oishi subsequently settled the case. (*Id.* at ¶ 36.)

Upon the conclusion of the Glass Malpractice Action, Dr. Oishi brought internal charges against Barrash for failure to maintain good professional standing. (*Id.* at ¶¶ 39, 42.) Dr. Oishi accused Barrash of violating the AANS Rules on Expert Opinion Services; specifically, he asserted that Barrash's expert testimony was unduly biased and, further, that he failed to review all pertinent available medical information before rendering his opinion about Dr. Oishi's management of the patient. (*Id.* at ¶ 42.)

Dr. Oishi's charges against Barrash were forwarded to the AANS Professional Conduct Committee (the "PCC"). (Pl.'s Compl. at ¶ 41.) After conducting a hearing, the PCC determined that Barrash violated the AANS Rules on Expert Opinion Services and recommended in its Report to the AANS Board of Directors that the AANS suspend Barrash's membership for six months. (*Id.* at ¶ 71.) After considering the PCC's recommendations, the Board of Directors concluded that Barrash's testimony violated the Rules on Expert Opinion Services, but decided to censure him instead of suspending his membership. (*Id* at ¶ 75.) Barrash exercised his right under the Bylaws to appeal the decision of the Board of Directors to the AANS Membership. (*Id.* at ¶ 76.)

The appeal was heard on April 11, 2011 at the Annual Business Meeting of the AANS. (*Id.* at ¶ 81.) On April 12, 2011, the AANS published a Notice of Censure on its website stating that the AANS censured Barrash for violating the Rules on Expert Opinion Services. (*Id.* at ¶ 82.) The first ground cited by the AANS was that Barrash failed "to provide unbiased testimony during part of a deposition in a civil lawsuit." (*Id.* at ¶ 82.) The second ground cited by the AANS was providing "expert testimony without having seen the imaging studies relevant to that testimony." (*Id.* at ¶ 82.) Barrash alleges that the AANS's publication of the censure was "defamatory and disparaging." (*Id.* at ¶ 83.)

 Plaintiff's Complaint alleges claims against the AANS for tortious interference with prospective business relations and economic advantage (Count I), breach of AANS Bylaws (Count II), and impairment of important economic interest from denial of due process (Count III). AANS seeks to dismiss Count I and Count II.

**II.     LEGAL STANDARD**

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim for which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). A claim "does not need detailed factual allegations" but must provide a party's grounds for entitlement to relief, "including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007), *citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

A district court will dismiss a claim under Rule 12(b)(6) only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1992). A complaint will survive a motion for dismissal only if the plaintiff pleads sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Twombly*, 550 U.S. at 570.

## III.    ANALYSIS

### A.  Tortious Interference Claim

The elements of a claim of tortious interference with prospective business relations are: "(1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to

occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *BDO Seidman LLP* v. *Alliantgroup, L.P.,* No. H-08-905, 2009 WL 1322555, *13 (S.D. Tex. May 11, 2009). As set forth in element two above, a plaintiff must plead and prove that a defendant's conduct would be actionable under a recognized tort. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Defendant argues that, if the recognized underlying tort is defamation, then Plaintiff's claim is time-barred. Defendant cites *Martinez v. Hardy*, 864 S.W.2d 767 (Tex. App. 1993), in which a terminated file maintenance clerk brought an action against her former employer and supervisors for defamation, breach of employment contract and tortious interference with contract. The gravamen of the plaintiff's tortious interference claim was allegedly defamatory statements made by one of her supervisors that resulted in her employment contract being terminated. *Id.* at 776. The court found that plaintiff's claim for tortious interference was nevertheless "inextricably intertwined with and dependent upon her claim for slander." *Id.* Accordingly, the court held that the one-year limitation period for slander applied and that the plaintiff's claim was time-barred. *Id.; see also Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.,* 512 F.3d 137, 146-47 (5th Cir. 2007) (applying one-year limitations period for defamation claims to tortious interference claim based on allegedly defamatory statements).

Plaintiff responds that his tortious interference claim is not based on defamation, but on commercial disparagement. Texas courts distinguish between defamation and commercial disparagement by the interests they protect and the damages that are recoverable for each. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). Defamation actions protect the personal reputation of the injured party, and seek damages for injury to reputation, humiliation or mental anguish. *Id.* Disparagement actions protect the economic interests of the

5

injured party against pecuniary loss, and seek damages for business or property losses. *Id.* Plaintiff argues that he is not alleging an injury to his reputation; rather, his claim is that his "business as an expert witness has suffered as a direct result of the censure." (Pl. Compl. ¶ 86.) Plaintiff argues that the two-year statute of limitations for commercial disparagement claims, rather than the one-year statute applicable to defamation claims, applies to his claims that the AANS published false statements about him. *Marquis v. OmniGuide, Inc.*, 3:09-CV-2092-D, 2011 WL 321112 (N.D. Tex. Jan. 28, 2011) (holding that a two-year statute of limitations applies for commercial disparagement claims).

The Court finds statements in Plaintiff's Complaint that seem to indicate both defamation and commercial disparagement claims. Plaintiff alleges that "the publication of the AANS censure of Barrash was defamatory and disparaging." (Pl.'s Compl. ¶ 83.) Plaintiff also alleges that "The AANS's censure of Barrash is easily found on the internet, and is well known among members of the legal community likely to consider hiring Barrash as an expert." (*Id.* at ¶ 85.). Such allegations seem to go to Plaintiff's personal reputation, rather than solely his business interests. However, Plaintiff also alleges that his business has suffered (*Id.* at ¶ 86), and that AANS purposely interfered with Barrash's legitimate business. (*Id.* at ¶ 90.)

However, even if the Court accepts Plaintiff's assertion as true, Plaintiff has not adequately pled a commercial disparagement claim. Under Texas law, the elements of a claim for business disparagement are: (i) publication by defendant of disparaging words; (ii) falsity; (iii) malice; (iv) lack of privilege; and (v) special damages. *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996). The Court finds that Plaintiff has not adequately pled falsity, malice, or special damages. While Plaintiff disagrees with AANS' interpretation of the Rules on Expert Opinion Services, and disputes the result AANS reached, Plaintiff has not demonstrated

or even pled that the statements in the censure are false. Additionally, Plaintiff also failed to allege facts sufficient to satisfy the malice element—indeed, in Plaintiff's response, he argues he does not have to prove actual malice. (Doc. No. 8.) Finally, Plaintiff's claim does not allege his special damages with the required specificity to survive a 12(b)(6) motion. Plaintiff's Complaint alleges that his "business as an expert witness has suffered as a direct result of the censure." (Pl.'s Compl. ¶ 86.) However, Plaintiff fails to identify any specific sources of economic loss. *See Encompass Office Solutions, Inc.* v. *Ingenix, Inc.,* 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (dismissing business disparagement claim because the complaint was conclusory as to special damages and "void of any facts" to support the allegation that "[t]he publication of these statements has caused [the plaintiff] to suffer lost profits and lost good will business reputation"); *Nationwide Bi-Weekly Admin.,* 512 F.3d at 147 (affirming the dismissal of the plaintiffs disparagement claim, stating that the plaintiff "failed to provide any meaningful basis upon which to distinguish it from the defamation claim" and that the plaintiff "failed to allege any specific economic loss").

Plaintiff also asserts that his tortious interference claim would be actionable under several other recognized torts, such as fraud and negligent misrepresentation. (Doc. No. 8, at 13.) However, Plaintiff has not pled the elements of either of these claims in his Complaint. Plaintiff has, for instance, failed to allege reasonable reliance, a necessary element for fraud and negligent misrepresentation. See *Jordan v. Jordan*, No. 05-98-01971-cv, 2001 WL 856209, at *4 (Tex. App.-Dallas 2001, no pet); *Ortiz v. Collins*, 203 S.W.3d 414, 421-22 (Tex. App.-Houston [14th Dist.] 2006, no pet). Additionally, claims of fraud require a higher degree of specificity under Federal Rule of Civil Procedure 9(b), including allegations of what acts were fraudulent, when they occurred, and who engaged in them.

7

No matter which tort Plaintiff's tortious interference claim is based upon, the Court finds it must dismiss the claim. If the underlying tort is defamation, it is barred by the statute of limitations. If Plaintiff's underlying tort is commercial disparagement, then Plaintiff has not pled falsity, malice, or special damages. Finally, Plaintiff has not alleged other potential underlying torts, such as fraud and negligent misrepresentation, with the required specificity. Therefore, the Court finds that it must dismiss Plaintiff's tortious interference claim.

### B.  Breach of Contract

Plaintiff also alleges that the AANS violated its own bylaws when it censured him. Plaintiff relies on Texas law that courts "have recognized that association bylaws may constitute a contract between the parties." *Monasco v. Gilmer Boating & Fishing Club,* 339 S.W.3d 828 (Tex. App. 2011). Texas courts have adopted a policy of non-intervention in the internal management of a voluntary association. *Dallas Cnty. Med. Soc'y v. Ubinas Brache,* 68 S.W.3d 31, 42 (Tex. App. 2001) ("a breach of contract action to maintain membership in a private association is not a well-recognized or well-defined common law action in this state because of the doctrine of judicial non-intervention."); *Juarez v. Texas Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 279 (Tex. App. 2005) ("Regardless of the manner in which Appellant has attempted to couch his lawsuit, the courts of this state recognize the right of a private association to govern its own affairs.")

However, Plaintiff argues that Illinois law should be applied. Illinois law, while generally deferential to an association's conduct of its internal affairs, does provide for review if the association fails to afford its members due process, or if the association has violated its own bylaws. *Austin v. American Ass'n of Neurological Surgeons*, 47 F. Supp. 2d 941, 942 (N.D. Ill. 1999); *Van Daele v. Vinci*, 51 Ill. 2d 389, 282 N.E.2d 389 (1972).

8

"Texas courts use the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws (1971) for all choice-of-law analysis except in contract cases in which the parties have agreed to a valid choice of law clause." *Fagan Holdings Inc. v. Thinkware Inc.*, 750 F. Supp. 2d 820, 824 (S.D. Tex. 2010)**.** Plaintiff argues that Restatement of Conflict of Laws § 302 applies, which would necessitate an application of Illinois law, since "the local law of the state of incorporation will be applied to determine such issues." Restatement (Second) of Conflict of Laws § 302 (1971).  Defendant alleges that § 301 applies, in which case Texas state law would apply to the breach of contract claim.

While § 302 references the "internal affairs" of a corporation, such matters involve the following: steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Restatement (Second) Conflict of Laws § 302 cmt. a. However, "[m]atters such as these must be contrasted with the acts dealt within § 301, which include, for example, the making of contracts." *Id.* § 302 cmt. e. Section 301 applies to disputes relating to an association's rights and liabilities with respect to a third person. Because Plaintiff is a third party, the Court finds that § 301 is applicable to Plaintiff's relationship with Defendant. Given that §301 of the Restatement is applicable to the issues presented by this dispute, as opposed to § 302, the most significant relationship test favors application of Texas law. Plaintiff admits that his claims arise from acts that occurred in Texas, the censure was based on his expert testimony in a Texas malpractice action, and any alleged injuries were sustained in Texas. (Pl.'s Compl. ¶¶ 11-12.)

Under the Texas law, the Court finds that doctrine of judicial non-intervention applies to the internal affairs of a private association. "The right of a voluntary club or association to interpret its own organic agreements, such as its charter, its by-laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them, and an individual, by becoming a member, subjects himself, within legal limits, to the association's power to administer as well as its power to make its rules." *Harden* v. *Colonial Country Club,* 634 S.W.2d 56, 59 (Tex.App.—Fort Worth 1982). As a result, "the requirements for judicial review are more than a mere breach of [an association's] own policies." *Dallas-Cnty. Med. Socy,* 68 S.W. 3d at 42. The Court in *Juarez* articulated the importance of and rationale for the doctrine of judicial non-intervention, stating as follows:

> The policy of non-intervention in the affairs of private associations, as shown above, is a well-established and a wise and necessary policy. Without such policy, organizations such as Appellees simply could not function. If the courts were to interfere every time some member, or group of members, had a grievance, real or imagined, the non-profit, private organization would be fraught with frustration at every turn and would founder in the waters of impotence and debility.

*Juarez,* 172 S.W.3d at 280.

The facts in *Juarez* are similar to those in this case. The court rejected plaintiff's plea for judicial intervention "because he [was] unhappy with the outcome of the initial review of the charges and complaints filed against him." stated that "it is the right of a private, non-profit organization to manage, within legal limits, its own affairs without interference from the courts." *Id.* The court dismissed the plaintiff's complaint, including his claim for breach of contract, in connection with his suspension from the association. *Id.* at 281.

Plaintiff *cites Hatley v. Am. Quarter Horse Ass'n*, 552 F.2d 646, (5th Cir. 1977), a case in which a horse owner sued the American Quarter Horse Association for its refusal to register one of his colts as a quarter horse. *Id.* at 657. The Fifth Circuit in *Hatley* found that due process was

10

lacking, and thus required the District Court to make the determination instead of the Association. However, in *Hatley,* the Association offered no appeal, and the court recognized that "a hearing of any sort [would] be meaningless." *Id.* at 657. This case is distinguishable because Plaintiff was offered two levels of appeal.

The Court does recognize that judicial non-intervention is not an absolute bar. *Bhd. of R. R. Trainmen v. Price,* 108 S.W.2d 239 (Tex. Civ. App. 1937). However, Plaintiff does not allege in his breach of contract claim that the AANS committed an illegal act or violated some public policy. Given the facts of this case, the Court finds that the doctrine of judicial non-intervention bars Plaintiff's breach of contract claim.

Defendant also argues that Plaintiff has not alleged that he fully performed under the alleged contract, a requirement of a breach of contract claim. *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.,* 771 F. Supp. 2d 680, 700 (S.D. Tex. 2011). For example, Defendant argues that Plaintiff fails to allege that he complied with the AANS Bylaws. Plaintiff responds that his Complaint is replete with allegations that he performed his duties as a member of the AANS; however, he concedes that his Complaint omits the formulaic allegation that he complied with his contractual obligations. (Doc. No. 21.)  The Court need not reach the question of whether Plaintiff alleged every element of his breach of contract claim, since the Court has found that, given the facts before it, judicial intervention is not appropriate.

Federal Rule of Civil Procedure 15 provides that this Court "should freely give leave when justice so requires." *Cole v. Sandel Med. Indus., LLC.,* 413 Fed.Appx. 683, 688 (5th Cir. 2011) (quoting Fed.R.Civ.P. 15(a)(2)). In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139

(5th Cir.1993)l; *see also United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted.")

The Court finds that Plaintiff may amend his first claim of tortious interference. If Plaintiff chooses to amend this claim, the Court orders Plaintiff not to rely upon an underlying tort of negligence, which the Court has already found would bar his claim because of the statute of limitation. Plaintiff may also amend his breach of contract claim. The Fifth Circuit has repeatedly recognized that Rule 15(a) evinces a liberal amendment policy. *See, e.g., Lowrey v. Texas A & M University System*, 117 F.3d 242, 245 (5th Cir.1997) ("Rule 15(a) expresses a strong presumption in favor of liberal pleading"); *Nance v. Gulf Oil Corporation*, 817 F.2d 1176, 1180 (5th Cir.1987) ("Federal Rule 15(a) counsels a liberal amendment policy"). Plaintiff has not yet had a chance to amend his Complaint. The Court, therefore, grants Plaintiff an opportunity to replead, with the recognition that the Court will apply Texas law to the breach of contract claim. Therefore, the Motion to Dismiss is **GRANTED,** with leave to amend within 14 days of this Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 13th day of August, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE