UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JAY MARTIN BARRASH, M.D.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-1054 |
| | § | |
| **AMERICAN ASSOCIATION OF** | § | |
| **NEUROLOGICAL SURGEONS, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Having invited and reviewed supplemental briefing from the parties, as well as the authorities which those briefs recommend, the Court finds itself with scant guidance from Texas courts regarding the proper disposition of the breach of contract claim asserted by Plaintiff Jay Martin Barrash, M.D. against Defendant American Association of Neurological Surgeons, Inc. ("AANS").[1] The AANS contends that Dr. Barrash's breach of contract claim is unavailing under Texas law, and that he is limited to his due process claim. (Doc. No. 47, at 3-4.) Dr. Barrash counters that he may pursue a breach of contract claim in addition to his due process claim, even if the claims are premised on the same factual allegations. (Doc. No. 48, at 13.)

Despite the lack of clear guidance from Texas case law, the Court concludes that the Texas Supreme Court would not entertain a breach of contract claim under the allegations pled by Dr. Barrash. As a result, the Court **GRANTS** Defendant's Supplemental Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. No. 47).

---

[1] The Court has twice recounted the factual allegations underlying this lawsuit. (Doc. Nos. 26 and 45.) They will not be repeated here.

1

**I.      ANALYSIS**

The Court begins its analysis with a brief survey of relevant Texas law. Under Texas law, a private, voluntary membership organization is empowered to "make," "adopt," and "interpet its own organic agreements, [] laws and regulations." *Brotherhood of R.R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex. Civ. App.—Galveston 1937, writ dism'd). "[A] member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as its power to make, its rules." *Id*. Consequently, courts play an extremely limited role in policing the activities of private organizations, and will not review the substance of a private organization's adjudication of a dispute involving one of its members. *See Dallas Cnty. Med. Soc'y v. Ubinas Brache*, 68 S.W.3d 31, 41 (Tex. App.—Dallas 2001, pet. denied). This is known as the doctrine of judicial non-intervention.[2] *See id*. at 42.

Despite the doctrine of judicial non-intervention, Texas law authorizes judicial review of whether a private organization acting in an adjudicative capacity has afforded due process to the affected member.[3] *See, e.g., Adams v. Am. Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex. Civ.

---

[2] The doctrine of judicial non-intervention appears to be animated, at least in part, by the understanding that courts lack relevant subject matter expertise which the organization possesses. *See Bullard v. Austin Real Estate Bd., Inc.*, 376 S.W.2d 870, 874 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.) (citing with approval law review commentary that courts should avoid "de novo" review of "the merits of an association's determination" because "insofar as familiarity with the context in which a case arises contributes to its correct disposition, the association may be assumed to provide a more competent tribunal"). It also has roots in judicial deference to the contractual relationship between a private organization and its members. *See Price*, 108 S.W.3d at 241 ("To say that courts may exercise the power of interpretation and administration reserved to the governing bodies of [private] organizations would plainly subvert their contractual right to exercise such power of interpretation and administration.").

[3] Some older cases use the phrase "principles of natural justice" rather than "due process," but the terms appear to be interchangeable. *See, e.g., Bullard v. Austin Real Estate Bd., Inc.*, 376 S.W.2d 870, 874 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.) (noting that a court may interfere in expulsion proceedings pending before a private organization if "the expulsion was in violation of the principles of natural justice"—i.e., if there has been "the denial of a fair hearing

App.—Amarillo 1979, writ ref'd n.r.e.) ("[E]very tribunal which has the power and authority to adjudicate matters involving legal questions are bound by the traditional notions of due process."). Courts have defined due process in this context to be minimal. For example, in *Hatley v. American Quarter Horse Association*, the Fifth Circuit suggested that due process is satisfied with notice and a hearing. *See* 552 F.2d 646, 656 (5th Cir. 1977). Moreover, the Fifth Circuit contemplated that an organization may, by contract or agreement, redefine its process to be even more minimal. *See id*. at 657 ("Had [the rule in question] specifically provided that registration [of plaintiff's horse] under [the rule] was within the sole discretion of the Executive Committee without the requirement of a hearing, then conceivably defendants could have prevailed under a consent or waiver theory."). In the absence of any private definition of what process is due, however, courts generally analogize to judicial proceedings. *See Adams*, 583 S.W.2d at 834.

This raises the question of what judicial review, if any, is available when a private organization imposes procedural safeguards beyond minimal due process, but fails to adhere to them in the context of a specific dispute. At least two Texas appellate courts have held that the organization cannot be made to account by way of a breach of contract claim or a due process claim. *See Ubinas Brache*, 68 S.W.3d at 42; *Whitmire v. Nat'l Cutting Horse Ass'n*, No. 2-08-176-CV, 2009 WL 2196126, at *5 (Tex. App.—Fort Worth July 23, 2009, pet. denied). These decisions are somewhat inconsistent with older cases which state that "courts will interfere [in the decision of a private organization] to ascertain whether or not the proceedings within the [private organization] were pursuant to the rules and laws of the [private organization]." *Lundine v. McKinney*, 183 S.W.2d 265, 273 (Tex. Civ. App.—Eastland 1944, no writ); *see also Brown v. Harris Cnty. Med. Soc'y*, 194 S.W. 1179, 1180-81 (Tex. Civ. App.—Galveston 1917, no writ)

---

or trial, lack of notice, an inadequate opportunity to be heard or defend one's self" or if the expulsion was "brought about by bad faith or malice").

3

(similar); *cf Adams*, 583 S.W.2d at 834 (analyzing plaintiffs' claim that they were denied due process by analogy to judicial proceedings "because the by-laws of [the organization] do not cover this subject"). The Court feels compelled to conclude that *Lundine* and *Brown* no longer represent good law in Texas and that—pursuant to *Whitmire*, *Ubinas-Brache*, and *Hatley*—contractual "due process" is at most a one-way valve. In other words, a private organization may be able to avoid judicial oversight by contractually eliminating default procedural protections, as *Hatley* suggests, but it does not appear to invite more judicial scrutiny by expanding them.

The Court must reconcile these rules with the oft-quoted "exception" to the doctrine of judicial non-intervention. As commonly phrased, the exception permits judicial intervention when the organization has "substitute[d] legislation for interpretation;" "transgress[ed] the bounds of reason, common sense, fairness;" or "contravene[d] public policy, or the laws of the land." *Price*, 108 S.W.2d at 241; *see also Ubinas Brache*, 68 S.W.3d at 41. Because no court has ever found the exception to be met, it is unclear what type or types of claims it authorizes. However, one Texas appellate court has intimated that the exception permits a due-process-type review only. *See Burge v. Am. Quarter Horse Ass'n*, 782 S.W.2d 353, 355-56 (Tex. App.—Amarillo 1990, no writ) (acknowledging the exception to the judicial non-intervention doctrine and later concluding that "we believe the process of registration and cancellation of registration [of a quarter horse] to be an integral part of the [organization's] internal management with which the courts will not interfere in the absence of deprivation of due process.").

The authorities cited above provide some oblique support for the AANS's position that Dr. Barrash has not stated a claim for breach of contract, but they are by no means definitive. Therefore, pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), the Court must make its own best guess as to how the Texas Supreme Court would rule on AANS's motion to dismiss Dr.

Barrash's breach of contract claim for failure to state a claim. *See Am. Int'l Speciality Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010).

As the Court explained in its January 31, 2014 order, Dr. Barrash has adequately alleged in the Amended Complaint that the AANS "substituted legislation for interpretation"—i.e., that it used the disciplinary proceeding against Dr. Barrash to create a rule, rather than to interpret and enforce a pre-existing one. Although no Texas case explicitly addresses how this "exception" to the judicial non-interference doctrine maps onto a cause of action, the Court concludes that the Texas Supreme Court would view Dr. Barrash's allegations as supporting a due process claim only. The Court reaches this conclusion because breach of contract seems a poor fit for the exception identified.[4] Additionally, similar breach of contract claims were tried and rejected in the *Ubinas Brache* and *Whitmire* cases, and the Court discerns no principled distinction between those claims and the breach of contract claim asserted by Dr. Barrash. By comparison, a due process claim is consonant with the concerns addressed by the exception; is flexible enough to test the merits of Dr. Barrash's allegations; and is expressly approved under Texas and Fifth Circuit law.

## II.     PLAINTIFF'S REQUEST TO AMEND COMPLAINT

Dr. Barrash seeks permission to amend Count II in the event that the Court grants the AANS's motion to dismiss. (Doc. No. 48, at 14-15.) He believes that he has uncovered evidence through discovery which will show that the AANS inconsistently adjudicated one of the Rules for Expert Opinion Services. He argues that this evidence will support another prong of the

---

[4] For example, Dr. Barrash alleges that the AANS failed to adhere to its own procedures when it adjudicated Dr. Masaki Oishi's complaint against him. (Doc. No. 27, at ¶¶ 140-41.) Even if true, this failure would not lead inexorably to the conclusion that the AANS legislated a new rule, rather than interpreted and enforced a pre-existing one. In other words, there is a fatal disconnect between the alleged "breach," and the exception to the judicial non-intervention doctrine which authorizes judicial scrutiny of the AANS's decision.

exception to judicial non-intervention—that the AANS's decision to censure him was "arbitrary and capricious." (*Id.*)

The Court cannot permit amendment based on the bare notion that the AANS may have inconsistently applied its rules once or twice in the past. As the survey of law in Section I shows, Texas courts display extreme deference to the right of a private organization to interpret and administer its own rules. Moreover, the Court is in no position to determine if the factual circumstances of one case are sufficiently similar or dissimilar to another to justify a deviation in result. Because amendment would be futile, on the information provided by Dr. Barrash, leave to amend is not extended.

### III.   CONCLUSION

For the reasons stated above, Dr. Barrash has failed to state a claim for breach of contract under Texas law. Defendant's Supplemental Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. No. 47) is therefore **GRANTED**.

Dr. Barrash's Motion to Compel Answers to Requests for Admission (Doc. No. 30) remains pending. The Court believes it prudent to convene another hearing, at which the relevance of the requested admissions in the context of Dr. Barrash's due process claim may be addressed. Parties will receive a notice of setting and are free to attend telephonically.

**IT IS SO ORDERED.**

**SIGNED** in Houston, Texas, on this the twenty-second day of May, 2014.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE