UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JAY MARTIN BARRASH, M.D.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-1054 |
| | § | |
| **AMERICAN ASSOCIATION OF** | § | |
| **NEUROLOGICAL SURGEONS, INC.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

As articulated in the Court's memorandum and order dated October 14, 2014 (the "October 14th Order"), the summary judgment record shows that the American Association of Neurological Surgeons, Inc. (the "AANS" or "Defendant") failed to provide due process to Dr. Jay Martin Barrash ("Dr. Barrash" or "Plaintiff") on the charge that he gave biased expert testimony in a medical malpractice case. However, the summary judgment record also shows that the AANS provided due process to Dr. Barrash on the charge that he gave expert testimony without having seen imaging studies relevant to the testimony. The Court convened a hearing and invited supplemental briefing on the question of whether Dr. Barrash is entitled to any damages or other relief based on these findings. Having reviewed the parties' submissions and the relevant law, the Court rules as follows.

I.  ANALYSIS

Dr. Barrash concedes that he cannot recover damages unless the April 12, 2011 censure (the "Censure") is reversed in full. He urges the Court to vacate the Censure, because "[i]t is by no means clear that the AANS would have censured Dr. Barrash if the only violation of its [Rules] . . . it had found was [Dr. Barrash's] failure to review [the] intraoperative x-ray[.]" (Doc.

1

No. 98, at 2.) He also asks the Court to determine on its own what punishment, if any, should be meted for this remaining infraction, because "the AANS cannot render a fair decision at this point in time." (*Id*. at 3.) Alternatively, he asks the Court to remand the matter to the AANS's Professional Conduct Committee ("PCC") for further hearing on the question of punishment, with rights of appeal to the AANS Board of Directors and general membership. (*Id*. at 10.)

The AANS disputes that there is any open question as to whether Dr. Barrash would have been disciplined for his violation of Rule B2, standing alone. (Doc. No. 97, at 2-6.) Additionally, it objects to any further intermeddling in its internal affairs. It argues that the Court's review for due process is all that the doctrine of judicial non-interference allows. (*Id*. at 6-7.) Because the Court found due process had been provided on the charge that Dr. Barrash failed to review a "relevant" and "available" intraoperative x-ray, the AANS contends that it is entitled to full summary judgment. (*Id*. at 8.)

Once again, the Court finds itself without solid footing in precedent. Although Dr. Barrash cites a number of cases in which courts have reversed the adjudicative decisions of private organizations because those organizations provided insufficient process to the affected members,[1] no case is on all fours with the fact pattern presented here. Dr. Barrash had notice, opportunity to respond, a full and fair hearing, and appeal rights regarding *one* of the grounds of the Censure. The AANS's failings as to the other ground are unfortunate, but they do not abrogate the fact that due process was provided, at least in part.

Dr. Barrash posits that the adjudicative process afforded him was irredeemably tainted by

---

[1] *Hatley v. Am. Quarter Horse Ass'n*, 552 F.2d 646 (5th Cir. 1977); *Masonic Grand Chapter of Order of Eastern Star v. Sweatt*, 329 S.W.2d 334 (Tex. Civ. App.—Fort Worth 1959, writ ref'd n.r.e.); *see also Pinsker v. Pacific Coast Soc. of Orthodontists*, 526 P.2d 253 (Cal. 1974); *McCune v. Wilson*, 237 So.2d 169 (Fla. 1970); *Kendler v. Rutledge*, 396 N.E.2d 1309 (1st Dist. 1979); *Virgin v. Am. College of Surgeons*, 192 N.E.2d 414 (1st Dist. 1963).

the PCC's conclusion—without fair notice to Dr. Barrash—that he had engaged in so-called "improper advocacy." This may be correct. But the record is simply not clear, either way, as to what the PCC, the AANS Board, or the AANS membership would have done if those bodies had confined their analysis to the charge that Dr. Barrash violated Rule B2 by failing to review the intraoperative x-ray before testifying.[2]

Dr. Barrash emphasizes the *possibility* that no disciplinary action would have been imposed, even accepting the PCC's conclusion that his actions violated Rule B2. He cites two disciplinary proceedings—against Dr. S and Dr. D—where a Rules violation was suspected or found, but no public admonition followed. (Doc. No. 98, at 6-7; Doc. No. 81-5, at 35-37; Doc. No. 81-6, at 1-8.) The problem with these examples is that they cannot show how Dr. Barrash's Rule B2 violation would have been viewed or handled. As the AANS notes in its supplemental submission, the AANS *has* imposed public disciplinary action based upon violations of Rule B2 alone. (Doc. No. 97, at 6; Doc. No. 97-6, at 2-9.)

It is unknown—perhaps unknowable—how the PCC would have proceeded had it only the violation of Rule B2 in mind when it issued its disciplinary recommendation to the AANS Board of Directors. Dr. Barrash would have the ambiguity resolved in his favor. But this remains a claim on which he bears the burden of proof. He has shown himself entitled to injunctive relief as to the aspect of the Censure stating that he "fail[ed] to provide unbiased testimony during part

---

[2] Four members of the PCC were deposed in connection with Dr. Barrash's claims, as was the President of the AANS at the time of the Censure. One PCC member testified that the committee would not have recommended suspension of Dr. Barrash's membership, and *probably* would not have recommended censure, if Dr. Barrash's only infraction had been failure to review the intraoperative x-ray; however, he also testified that the decision would have been reached collectively. (Doc. No. 80-5, at 214.) It appears that no other PCC member opined, either way, as to how the committee might have ruled in those circumstances. The AANS President, however, testified that Dr. Barrash would have been censured for any one of the infractions identified in the PCC Report. (*Id*. at 326.)

3

of a deposition in a civil lawsuit."[3] But the relief can be and will be limited to this finding, which issued without due process.

Moreover, even if Dr. Barrash had carried his burden and established a right to more expansive injunctive relief, he misconceives the scope of any further proceedings by the AANS.[4] Dr. Barrash's supplemental submission asks the Court to remand to the AANS for a decision limited to the correct punishment for his violation of Rule B2. (Doc. No. 98, at 10.) He ignores, however, that the Court made no ruling on the merits of the charge that his causation-related testimony was "biased." The Court merely determined that the AANS did not provide due process regarding this charge. If the AANS wished to pursue the charge again, the Court is aware of no grounds on which to prevent it from doing so.[5]

In summary, the Court confines its relief to the showing made by the summary judgment record. Because the AANS did not give proper notice or a fair hearing regarding the charge that Dr. Barrash "fail[ed] to provide unbiased testimony during part of a deposition in a civil

---

[3] Although neither party cites or argues the standard for injunctive relief, it is warranted when the party seeking the injunction—here, Dr. Barrash—has shown: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *O'Connor v. Smith*, 427 Fed. App'x 359 (5th Cir. 2011).

[4] The Court believes it both unnecessary and ill-advised to accept Dr. Barrash's invitation to decide the punishment, if any, for Dr. Barrash's violation of Rule B2. Although Dr. Barrash claims that the litigation of this case has made it impossible for the AANS to fairly adjudicate further proceedings against him, the Court has seen no evidence of bad faith or ill will against Dr. Barrash. Additionally, while Dr. Barrash claims that the AANS "has no particular expertise in determining the appropriate sanction for purported violations of [the Rules]," the Court believes strongly to the contrary. The AANS has considerable experience evaluating the severity of ethical transgressions, and in placing those transgressions in context, which the Court lacks.

[5] Dr. Barrash has argued that the PCC was not authorized to look beyond the specific charges levied by Dr. Masaki Oishi in his charging letters. As the Court noted in its October 14th Order, however, the Court reviewed the proceedings afforded by the AANS for basic due process, not for adherence to internal procedures. (Doc. No. 95, at 14 n.6.)

lawsuit," this aspect of the Censure must be expunged. The remainder of the Censure may remain in place.

The Court commends the parties and their advocates for their thoroughness, professionalism, and zeal in this sensitive matter. Although the Court feels that it lacks any basis to order the AANS to conduct supplemental proceedings, the AANS remains free to take whatever additional actions it feels are necessary to fully address the concerns raised by Dr. Barrash. The Court continues to hope that the parties may, through informal discussion and negotiation, reach a more satisfactory resolution than litigation can provide.

## II. CONCLUSION

The Court previously **GRANTED IN PART** and **DENIED IN PART** Plaintiff's Motion for Partial Summary Judgment (Doc. No. 80) because the undisputed facts show that the AANS failed to provide due process to Dr. Barrash in connection with its second ground for Censure: that Dr. Barrash engaged in "improper advocacy" in the Glass Malpractice Action. This ruling is reiterated for clarity.

The Court previously **GRANTED IN PART** Defendant's Motion for Summary Judgment (Doc. No. 78) because the undisputed facts also show that the AANS provided due process to Dr. Barrash in connection with its first ground for Censure: that Dr. Barrash "[gave] expert testimony without having seen the imaging studies relevant to that testimony." The Court reserved ruling on the remainder of Defendant's motion, pending supplemental argument. For the reasons articulated above, the remainder of Defendant's Motion for Summary Judgment (Doc. No. 78) is hereby **DENIED**.

Dr. Barrash has shown himself entitled to limited injunctive relief, as explained above. The parties are ordered to confer and submit a proposed final judgment by November 18, 2014. The final judgment may be agreed to as to form only.

**IT IS SO ORDERED.**

**SIGNED** in Houston, Texas, on this the fourth day of November, 2014.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE